JUDGE HOLWELL



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALI ARAR, On Behalf Of Himself And All Others Similarly Situated, )))) | Civil Action N[...] |
| Plaintiff, )))) | CLASS ACTION COMPLAINT |
| v. )) | |
| GEROVA FINANCIAL GROUP LTD, GARY HIRST, MICHAEL HLAVSA, JOSEPH BIANCO, JACK DOUECK, ARIE VAN ROONE, and KEITH LASLOP, )))))) | **JURY TRIAL DEMANDED** |
| Defendants. )) | |

Plaintiff Ali Arar ("Plaintiff"), individually and on behalf of all other persons similarly

situated, by his undersigned attorneys, for his Class Action Complaint against defendants, alleges

upon personal knowledge as to himself and his own acts, and upon information and belief as to

all other matters, based on, *inter alia*, the investigation conducted by and through his attorneys,

which included, among other things: a review of the defendants' public documents; conference

calls and announcements made by defendants; Securities and Exchange Commission ("SEC")

filings; wire and press releases published by and regarding Gerova Financial Group Ltd.

("Gerova" or the "Company") securities analysts' reports and advisories about the Company; and

information readily obtainable on the Internet.

## NATURE OF THE ACTION

1.      This is a securities fraud class action on behalf of all persons who purchased or

acquired Gerova securities from January 8, 2010 through and including February 23, 2011 (the

"Class Period").  This class action is brought under Sections 10(b) and 20(a) of the Securities

Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a); and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

2. Throughout the Class Period, defendants made false and misleading statements and failed to disclose material adverse facts about the Company's business, operations, and prospects, including but not limited to the fact that a substantial portion of the assets it acquired pursuant to several transactions in January 2010 were impaired, illiquid, and worth far less than their recorded value; and that some of these acquisitions were with companies controlled by or affiliated with Gerova's Chief Executive Officer, defendant Gary Hirst and CFO Michael Hlavsa.

3. On January 10, 2011, Dalrymple Finance LLC published a report (the Dalrymple Report"), critical of Gerova, labeling it "a game of smoke and mirrors," and specifically questioning the valuation of the assets acquired in January, 2010. On this news, Gerova shares dropped $1.06 or nearly 4%, to close at $26.98.

4. On January 18, 2011, Gerova responded by calling the Dalrymple Report a "disinformation campaign," the allegations "materially false," and the authors "not reputable." The Company announced it was hiring Kroll, an intelligence and risk analysis firm, to investigate the authors of the report for stock manipulation.

5. On January 28, 2011, The *Wall Street Journal* published an article referencing a spreadsheet prepared by Gerova personnel in or about May 2010, which valued assets acquired in January 2010 at 40% less than their book value.

6. On February 10, 2011, after the market closed, the Company announced the resignation of the Company's Chairman of the Board, Chief Executive Officer and Directors.

On this news, Gerova shares declined by $9.31 or 59% for four consecutive trading sessions, to close at $6.39 on February 16, 2011.

7.      On February 23, 2011, the NYSE halted the stock at $5.28 citing the need for "additional information relative to operations, management restructuring, and business plans." Gerova's shares were subsequently delisted.  On April 18, 2011, the Company announced its intention to delist from the NYSE.

## **JURISDICTION**

8.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5 promulgated there under by the SEC, 17 C.F.R. § 240.10b-5.

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

10.     Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b).  During the Class Period, Gerova common stock traded on the New York Stock Exchange.

11.     In connection with the challenged conduct, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities markets.

## **PARTIES**

### **Plaintiff**

12.     Plaintiff, as set forth in his certification attached hereto, purchased Gerova securities during the Class Period and was damaged when the disclosures of the Company's fraud caused the price of Gerova shares to sharply decline.

**Defendants**

13.     Defendant Gerova is incorporated in Bermuda.  Between January 2008 and January 29, 2010, the Company was traded on the American Stock Exchange ("Amex") under the ticker CIO/U and from February 2010 to September 2010, Gerova shares were traded under the ticker "GFC."  Since September 2010, Gerova shares have been traded on the NYSE under the ticker symbol "GFC."

14.     Defendant Gary T. Hirst ("Hirst") was the founder of the Company and served as the Company's Chief Executive officer until January 2010.  Hirst also served as the Company's Chairman of the Board of Directors ("Board") from April 13, 2010, until his resignation in February 2011.

15.     Defendant Michael Hlavsa ("Hlavsa"), since the Company's inception and at all relevant times herein, was the Company's the Chief Financial Officer until his resignation in February 2011.

16.     Defendant Joseph J. Bianco ("Bianco") has served as Chief Executive Officer of Gerova since June 2010 until his resignation in February 2011.  Defendant Bianco is Chairman of the Board of Directors of Fund.com, which was a participant in the January 2010 transaction.

17.     Defendant Jack Doueck ("Doueck") has served as a director of Gerova since January 2010 until his resignation in February 2011.  Defendant Doueck was a principal of Stillwater Capital Partners, LLC, and is the investment manager of the Stillwater Funds, which was a participant in the January 2010 transaction.

18.     Defendant Arie Jan Van Roone ("Van Roone") has served as a director on the Company's Board since January 2010.

19.    Defendant Keith Laslop ("Laslop") has served as the Company's Chief Operating Officer since June 2010 and as a director on the Company's Board since 2008.

20.    The defendants referenced above in ¶¶ 13-18 are sometimes referred to herein as the "Individual Defendants."

### SUBSTANTIVE ALLEGATIONS

**Background**

21.    Gerova was initially organized as a Special Purpose Acquisition Company ("SPAC") under the name Asia Special Situations Acquisitions Corp.  On January 16, 2008, it conducted an Initial Public Offering of 10 million units priced at $11.50 per unit.  Each unit included a warrant as well as a share.  The IPO raised $115 million.  At the time, the Company's stated intent was to acquire an "as yet unidentified business or set of businesses."

22.    On August 11, 2008, Gerova announced it had entered a merger agreement with Chinatel as a first step to listing on the NYSE Euronext Group Exchange.  Defendants failed to disclose that officers of Gerova had invested in Chinatel through an affiliate, Fund.com. Inc., whose Chairman was defendant Bianco.  This transaction was terminated due to "unresolved regulatory due diligence issues in the People's Republic of China relating to the proposed transaction."

23.    On March 16, 2009, the Company announced a proposed merger implementation agreement with White Energy Technology Company Ltd. ("White Energy"), another company with which Gerova insiders had undisclosed interests.  This transaction was likewise terminated on November 12, 2009, but resulted in payment to Gerova of $3,125,000, consisting of $2,500,000 payable directly to the Company and $625,000 payable to retire 50% of the Company's $1,250,000 line of credit note to an unaffiliated third party."   The undisclosed

"unaffiliated third party" was, in fact, Noble Investment Fund, which was managed by Gerova's then CEO, defendant Hirst.

24.     The failure of this second deal placed further pressure on defendants to consummate a deal before January 23, 2010, the two year anniversary of the IPO.

**The January 2010 Transaction**

25.     On January 7, 2010, Gerova announced the proposed acquisition of three insurance companies (Allied Provident; Northstar Reinsurance Ltd – Bermuda; and Northstar Reinsurance Ltd. – Ireland), as well as two commercial loan portfolios valued at approximately $540 million from Stillwater Asset Back Fund; and assets and investments valued at approximately $114 million from Wimbledon Financing Master Fund Ltd. and Wimbledon Real Estate Financing Fund Ltd., managed by Weston Capital Asset Management of West Palm Beach, Florida. (collectively the "January 2010 transaction").

26.     The Company represented that, as a result of these transactions, Gerova's balance sheet would reflect net equity value of $832.6 million.

27.     On January 20, 2010, the Company announced that it had consummated the business combination. The Company committed to appraise the Stillwater assets by March 31, 2010, and to provide quarterly appraisals thereafter.

28.     The foregoing statements regarding the January 2010 transaction were false and misleading, and omitted material information including, but not limited to, the fact that:

(a)     the statements regarding the Allied acquisition failed to disclose that Allied's securities portfolio consisted of illiquid securities, valuation of which was inflated; and that those securities were:

(i)     in a Codrington Partners and Global Asset Fund, both of which were managed by firms controlled by Defendant Hirst; and

6

        (ii)      in Taurus Global Fund, a fund managed by a firm controlled by James Tagliaferri, a member of Gerova's "advisory board," and

    (b)      the statements regarding Stillwater assets failed to disclose that:

        (i)       a substantial portion of its real estate loans had been fraudulently originated, resulting in criminal convictions of persons involved in such origination;

        (ii)      the auditor for the assets of the Stillwater fund, from which the assets were purchased, PricewaterhouseCoopers, had rendered an adverse opinion regarding Stillwater's financial statements as of December 31, 2008, and had been unable to obtain sufficient evidence to support valuation of Stillwater's assets as of December 2009, both of which were known or recklessly ignored by defendants; and

    (c)      the assets and investments acquired through the Wimbledon and Weston funds were controlled by Fund.com, a New York based company sharing several executives and directors with Gerova including defendants Hlavsa, Hirst and Bianco.

29.     Following consummation of the January 2010 transaction, defendant Hirst resigned as CEO and Chairman and was replaced by Marshall Manley.

30.     On March 31, 2010 the deadline for audited valuations of Stillwater assets passed without any disclosure or comment from Gerova. In fact, the Company had such an appraisal performed, which determined that the properties were overvalued by 40% or more, which defendants failed to disclose.

31.     On April 13, 2010, The Company said that Manley "resigned from all positions held with Gerova." The reasons for his departure were not disclosed. Hirst thereupon resumed his role as Chairman of Gerova's Board of Directors.

32.     On June 1, 2010, Stillwater was served a Wells Notice by the SEC, asserting that its managers had disseminated "materially misleading statements regarding the Stillwater Asset Backed Funds to both existing and prospective investors in the Funds," and that 40% of its assets

"were either in foreclosure or were experiencing interest payment delinquencies of 90 days or more." This Wells Notice was not publicly disclosed at the time, even though defendant Doueck continued to be a director of Gerova while also managing the Stillwater Fund.

33.     On June 2, 2010, Gerova filed its Form 20-F for the year ended December 31, 2009. While the 20-F described the January 2010 transaction, it omitted the illiquidity of Allied Provident's securities portfolio and the related party nature of the transaction. While the Stillwater assets were described as "illiquid short and medium term loans and other asset back obligations," there was no disclosure that the value of those assets was 40% less than the previously represented $540 million.

34.     On June 16, 2010 Defendants Bianco and Laslop both resigned from Fund.com, Inc. and took executive posts as CEO and COO at Gerova. Laslop was already a director at the Company. Within hours of assuming in the position of CEO, Bianco attested to the strength of internal controls and veracity of the account in the 20-F for Gerova's previous fiscal year by signing Gerova's SOX certification that was filed with the Company's amended Form 20-F.

35.     On September 8, 2010, the Company announced that it would begin trading on the NYSE.

**<u>Revelations</u>**

36.     On January 10, 2011, The Dalrymple Report was issued, asserting, *inter alia*, that the Stillwater assets had been grossly overvalued and concluded that Gerova "has many hallmarks of a classic fraud." The report was not widely circulated, but that day Gerova shares dropped from $28.11 to $26.32.

37.     On January 18, 2011, the Company responded to the Dalrymple Report in a press release, announcing it had hired Kroll to investigate the Dalrymples and other unnamed "short-

sellers."  This had the unintended consequence of further publicizing the Dalrymple charges, resulting in Gerova shares declining further to $24.30.

38.     On January 25, 2011, *Forbes* published a redacted copy of the June 1, 2010 Wells Notice.

39.     On January 28, 2011, the *Wall Street Journal* published an article stating that it had reviewed a copy of the spreadsheet prepared by Gerova in May 2010, showing that the Stillwater portfolio was significantly impaired at the time.

40.     On February 11, 2011, the Company announced the resignations of defendants Bianco, Hirst, and Laslop.  By the close on Monday, shares dropped to $12.00.

41.     On February 15, 2011, newly appointed Gerova CEO Dennis Pelino withdrew. Gerova shares dropped to $6.50

42.     On February 23, 2011, Gerova trading was halted on the New York Stock Exchange, pending disclosure of additional information relative to its operations, management restructuring and business plans, when halted shares had dropped to $5.28.

43.     On April 18, 2011, the Company announced it would seek delisting from the NYSE.

## CLASS ACTION ALLEGATIONS

44.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Gerova securities during the Class Period (the "Class"); and were damaged thereby.  Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal

representatives, heirs, successors or assigns, and any entity in which defendants have or had a controlling interest.

45.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Gerova securities were actively traded on the NYSE and/or AMEX.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Gerova or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

46.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

47.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

48.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;
- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Gerova;
- whether the Individual Defendants caused Gerova to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Gerova securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

49.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

50.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Gerova securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE AMEX, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold Gerova securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

51.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

11

## CLAIMS FOR RELIEF

## COUNT I

**(Against All Defendants For Violations of
Section 10(b) And Rule 10b-5 Promulgated Thereunder)**

52.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

53.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

54.     During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Gerova securities; and (iii) cause Plaintiff and other members of the Class to purchase Gerova securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

55.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to

influence the market for Gerova securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Gerova's finances and business prospects.

56.     By virtue of their positions at Gerova, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

57.     Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Gerova securities from their personal portfolios.

58.     Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control.  As the senior managers and/or directors of Gerova, the Individual Defendants had knowledge of the details of Gerova internal affairs.

59.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Gerova.  As officers and/or directors of a publicly-held company, the Individual Defendants had

a duty to disseminate timely, accurate, and truthful information with respect to Gerova's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Gerova securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Gerova's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased Gerova securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities, and/or upon statements disseminated by defendants, and were damaged thereby.

60.     During the Class Period, Gerova securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased shares of Gerova securities at prices artificially inflated by defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased said shares, or would not have purchased them at the inflated prices that were paid.  At the time of the purchases by Plaintiff and the Class, the true value of Gerova securities were substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Gerova securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

61.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

62.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)

63.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

64.    (a)    During the Class Period, the Individual Defendants participated in the operation and management of Gerova, and conducted and participated, directly and indirectly, in the conduct of Gerova's business affairs.  Because of their senior positions, they knew the adverse non-public information about Gerova's misstatement of income and expenses and false financial statements.

(b)    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Gerova's financial condition and results of operations, and to promptly correct any public statements issued by Gerova which had become materially false or misleading.

(c)    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Gerova disseminated in the marketplace during the Class Period concerning Gerova's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Gerova to engage in the wrongful acts complained of herein.  The Individual Defendants therefore, were "controlling persons" of Gerova within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they

participated in the unlawful conduct alleged which artificially inflated the market price of Gerova securities.

65.    Each of the Individual Defendants, therefore, acted as a controlling person of Gerova.  By reason of their senior management positions and/or being directors of Gerova, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause Gerova to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Gerova and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

66.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Gerova.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands

trial by jury of all issues that may be so tried.

Dated:  May 5, 2011

POMERANTZ HAUDEK GROSSMAN
& GROSS LLP

By:_____

Jeremy A. Lieberman

Marc I. Gross
Jessica N. Dell
100 Park Avenue, 26th Floor
New York, New York 10017
Telephone: (212) 661-1100
Facsimile:  (212) 661-8665

POMERANTZ HAUDEK GROSSMAN
& GROSS LLP
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Phone: 312-377-1181
Fax: 312-377-1184

*Attorneys for Plaintiff*

**Certification of Plaintiff**

**Pursuant to Federal Securities Laws**

I, Ali Arar, make this declaration pursuant to Section 101 of the Private Securities Litigation Reform Act of 1995, as required by Section 21D(a)(2) of Title I of the Securities Exchange Act of 1934.

1. I have reviewed a complaint against at Gerova Financial Group, Ltd. ("GFC") and authorize a filing of a complaint on my behalf.

2. I did not purchase my GFC securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under Title I of the Securities Exchange Act of 1934.

3. I am willing to serve as a representative party on behalf of a class as set forth in the Complaint, including providing testimony at a deposition and trial if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action and that the Counsel will exercise its discretion in determining whether to move on my behalf for appointment as lead plaintiff.

4. To the best of my current knowledge, the attached sheet lists all of my purchases and sales in GFC securities during the Class Period as specified in the Complaint.

5. During the three year period preceding the date on which this certification is signed I have not sought to serve as a representative party on behalf of a class under the federal securities laws, except as follows:

6. I agree not to accept any payment for serving as a representative party on behalf of th class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

7. The matters stated in this declaration are true to the best of my current knowledge, information and belief.

8. I declare under penalty of perjury that the foregoing is true and correct.

**Executed on** 04/07/2011     **at** Kew Gardens, NY
                       (City, State)

                       (Signature)

                       Ali Arar
                       (Type or print name)

**GEROVA FINL INC**                                                   ARAR, ALI
**CLASS PERIOD:  JAN 16 2008 through FEB 23 2011**

| Date | Security | Trans | Units | Price |
|------|----------|-------|-------|-------|
| 1/8/2010 | GFC WS | PUR | 1,000 | $0.4800 |
| 1/12/2010 | GFC WS | PUR | 2,000 | $0.4000 |
| 1/19/2010 | GFC WS | SLD | 1,500 | $0.8200 |
| 1/25/2010 | GFC WS | PUR | 5,000 | $0.3000 |
| 5/27/2010 | GFC WS | PUR | 1,000 | $0.6000 |
| 1/20/2011 | GFC WS | PUR | 4,000 | $0.2000 |
| 2/7/2011 | GFC | PUR | 300 | $17.6700 |
| 2/16/2011 | GFC | PUR | 500 | $7.5100 |
| 2/16/2011 | GFC | SLD | (300) | $6.3400 |
| 2/16/2011 | GFC | SLD | (500) | $6.3400 |