**HARWOOD FEFFER LLP**
Robert I. Harwood
Samuel K. Rosen
Peter W. Overs, Jr.
488 Madison Avenue, 8th Floor
New York, NY 10022
Telephone: (212) 935-7400
Facsimile: (212) 753-3630

**Attorneys for Plaintiff**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WAYNE T. BONNER, On Behalf of Himself And All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> GEROVA FINANCIAL GROUP LTD., GARY HIRST, MICHAEL HLAVSA, JOSEPH BIANCO, JACK DOUECK, ARIE VAN ROONE, and KEITH LASLOP, <br><br> Defendants. | Civil Action No. 11-cv-3796 <br><br> **CLASS ACTION** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF
WAYNE T. BONNER'S MOTION FOR
CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT
AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………...ii

I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY……………1

II.   ARGUMENT………………………………………………………………3

      A.    The Related Actions Should Be Consolidated………………………...3

      B.    Plaintiff Should Be Appointed Lead Plaintiff………………………….4

            1.    Plaintiff Is Making A Motion In Response
                 To A Notice……………………………………………………4

            2.    Plaintiff Has The Largest Financial Interest
                 In This Action………………………………………………….5

            3.    Plaintiff Satisfies The Requirements Of Fed. R.
                 Civ. P. 23………………………………………………………6

                   a.   Plaintiff's Claims Are Typical Of The Claims
                        Of The Class…………………………………………..6

                   b.   Plaintiff Is An Adequate Representative Of
                        The Class………………………………………………8

            4.    Plaintiff Is Presumptively The Most Adequate
                 Lead Plaintiff…………………………………………………..9

      C.    The Court Should Approve Plaintiff's Choice of
           Lead Counsel…………………………………………………………9

III.  CONCLUSION…………………………………………………………...11

## TABLE OF AUTHORITIES

**Cases**          **Page**

*Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*,
     141 F.R.D. 229 (2d Cir. 1992) ..................................................................................7

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
     504 F.3d 229 (2d Cir. 2007) ..................................................................................6, 8

*Ferrari v. Impath, Inc.*,
     2004 U.S. Dist. LEXIS 13898 (S.D.N.Y. July 20, 2004) .......................................6

*In re Drexel Burnham Lambert Group, Inc.*,
     960 F.2d 285 (2d Cir. 1992) ....................................................................................7

*In re Elan Corp. Sec. Litig.*,
     2002 U.S. Dist. LEXIS 23162 (S.D.N.Y. Dec. 3, 2002) ....................................7, 10

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
     574 F.3d 29 (2d Cir. 2009) ......................................................................................8

*In re Smith Barney Transfer Agent Litig.*,
     2006 U.S. Dist. LEXIS 19728 (S.D.N.Y. Apr. 17, 2006) .....................................10

*Janbay v. Canadian Solar, Inc.*,
     272 F.R.D. 113 (S.D.N.Y. 2010) ....................................................................6, 7, 8

*Johnson v. Celotex Corp.*,
     899 F.2d 1281 (2nd Cir. 1990) ................................................................................3

*Kokkinis v. Aegean Marine Petro Network, Inc.*,
     2011 U.S. Dist. LEXIS 54939 (S.D.N.Y. May 19, 2011) .............................5, 8, 10

*Robidoux v. Celani*,
     987 F.2d 931 (2d Cir. 1993) ....................................................................................7

*Sczesny Trust v. KPMG LLP*,
     223 F.R.D. 319 (S.D.N.Y. 2004) .........................................................................4, 6

*Vanamringe v. Royal Group Techs. Ltd.*,
     237 F.R.D. 55 (S.D.N.Y. 2006) ...............................................................................5

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
     216 F.R.D. 248 (S.D.N.Y. 2003) .............................................................................6

**Statutes**

15 U.S.C. §78j(b) ...................................................................................................................2

15 U.S.C. §78t(a) ...................................................................................................................2

15 U.S.C. §78u-4(a)(3)(B) ..................................................................................................4, 6

15 U.S.C. §78u-4(a)(3)(B)(i) ..................................................................................................5

15 U.S.C. §78u-4(a)(3)(B)(iii) ................................................................................................5

15 U.S.C. §78 u-4(a)(3)(b)(iii)(I) ............................................................................................9

17 C.F.R. 10b-5 .....................................................................................................................2

Fed. R. Civ. P. 23 ...................................................................................................................6

Fed. R. Civ. P. 23(a) ...............................................................................................................6

Fed. R. Civ. P. 23(a)(3) ..........................................................................................................6

Fed. R. Civ. P. 42(a) ...............................................................................................................3

Plaintiff Wayne T. Bonner ("Plaintiff") respectfully submits the following memorandum of law in support of his motion for consolidation of related actions, appointment as lead plaintiff and approval of lead counsel.

**I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This is a securities class action on behalf of all purchasers of the common stock of Gerova Financial Group Ltd. ("Gerova" or the "Company") between January 8, 2010 and February 23, 2011 inclusive (the "Class Period"), against Gerova and certain of its executive officers for violations of the Securities Exchange Act of 1934 (the "Exchange Act").

Defendant Gerova was initially organized as a Special Purpose Acquisition Company ("SPAC") under the name Asia Special Situations Acquisitions Corp.  On January 16, 2008, it conducted an Initial Public Offering of 10 million units priced at $11.50 per unit, which raised $115 million.  At the time, the Company's stated intent was to acquire an "as yet unidentified business or set of businesses."  The Company then proceeded over the next two years to announce and ultimately not consummate two proposed acquisitions, both of which involved undisclosed interests of Company insiders.

The Company eventually acquired three insurance companies on January 20, 2010, on which date the Company valued the acquired assets at $832.6 million and committed to appraise certain acquired assets by March 31, 2010 and to provide quarterly appraisals thereafter.  Such appraisal never occurred.  Before the March 31, 2010 appraisal deadline, the Company's then-CEO and Chairman, defendant Hirst, resigned, and then later reassumed his role as Chairman after the unexplained resignation of a successor CEO and Chairman on April 13, 2010.

On June 2, 2010, the Company received a Wells Notice concerning the unappraised assets, which alleged that such assets were undervalued by 40%.  This Wells Notice was not disclosed by

the Company. Despite the uncertainty of the value of the unappraised assets and other acquired assets, the Company announced it would begin trading on the NYSE on September 8, 2010.

On January 10, 2011, Dalrymple Finance LLC published a report (the "Dalrymple Report") critical of the Company wherein it labeled Gerova "a game of smoke and mirrors," and specifically questioned the valuation of the assets acquired in January 2010. The Dalrymple Report concluded that the acquired assets had been grossly overvalued and that Gerova "has many hallmarks of a classic fraud." On January 28, 2011, the *Wall Street Journal* published an article stating that it had reviewed a copy of the spreadsheet prepared by Gerova in May 2010, showing that the unappraised assets were significantly impaired at the time. In the aftermath of these devastating revelations, on February 11, 2011, the Company announced the resignations of defendants Gary Hirst, Joseph Bianco and Keith Laslop, the Company's then-Chairman, CEO and COO, respectively. By the close on the following Monday, February 14, 2011, shares dropped to $12.00. On February 15, 2011, newly appointed Company CEO Dennis Pelino withdrew. Gerova shares plummeted to $6.50 in response. On February 23, 2011, Gerova trading was halted on the New York Stock Exchange, pending disclosure of additional information relative to its operations, management restructuring and business plans, by which time shares had dropped to $5.28. On April 18, 2011, the Company announced it would seek delisting from the NYSE.

Plaintiff commenced this action on June 3, 2011, alleging defendants violated Sections 10(b) and 20(a) of the Exchange Act as amended by the PSLRA, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission, 17 C.F.R. 10b-5. Specifically, Plaintiff alleges that during the Class Period, defendants issued a series of

Forms 10-K and 10-Q with the Securities and Exchange Commission ("SEC") that contained false and misleading statements regarding Gerova's financial value.

On May 5, 2011, counsel for plaintiff Arar published a notice of the pendency of an action against Gerova asserting claims substantially similar to those asserted in this action. A copy of this notice is attached to the Declaration of Samuel K. Rosen as Exhibit A. Plaintiff Arar's action and this action are hereinafter referred to as the "Related Actions."

Plaintiff brings the instant motion for consolidation of Related Actions pursuant to Federal Rule of Civil Procedure 42(a), and for appointment as lead plaintiff and approval of lead counsel pursuant to Section 21D(a)(3)(B) of the Exchange Act.

## II.   ARGUMENT

### A.   The Related Actions Should Be Consolidated

Consolidation pursuant to Federal Rule of Civil Procedure Rule 42(a) is proper when actions involve common questions of law and fact. *See Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2nd Cir. 1990). The Court has broad discretion under this Rule to consolidate cases pending within its District. *Id.*

The Related Actions present similar factual and legal issues, as they involve the same subject matter, and present the same legal issues. Each alleges the same violations of federal securities laws, and is based on the same wrongful course of conduct. Each names the Company and certain of its officers and/or directors as defendants. Because the Related Actions arise from the same facts and circumstances and involve the same subject matter, the same discovery and similar class certification issues will be relevant to the Related Actions. Accordingly, consolidation under Rule 42(a) is appropriate.

### B. Plaintiff Should Be Appointed Lead Plaintiff

Section 21D(a)(3)(B) of the PSLRA provides the procedure for selecting lead plaintiff in class actions brought under the Exchange Act. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of (i) 60 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. §78u-4(a)(3)(B). Under the PSLRA, a plaintiff is entitled to a statutory presumption of being the "most adequate" lead plaintiff if it:

> (aa) has either filed the complaint or made a motion in response to a notice. . . ;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*See Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 323 (S.D.N.Y. 2004) (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc)).

As set forth below, Plaintiff satisfies all three of these criteria and is thus entitled to the presumption that he is the "most adequate plaintiff" for the Class.

#### 1. Plaintiff Is Making A Motion In Response To A Notice

Plaintiff filed his complaint on June 3, 2011 within 60 days of the filing by plaintiff Arar on May 5, 2011 of a notice of pendency announcing that a securities class action had been filed against defendants herein, and advising purchasers of Gerova securities that they had 60 days from that date to file a motion to be appointed as lead plaintiff. Plaintiff files the instant motion pursuant to plaintiff Arar's published notice, having filed with this motion his sworn certification attesting that he is willing to serve as representative of the Class and willing to provide testimony

at deposition and trial, if necessary. *See* Plaintiff's Certification to his Complaint attached to the Rosen Declaration as Exhibit B ("Plaintiff's Certification"). Plaintiff therefore satisfies the requirement of either filing an original complaint or making a motion in response to a published notice. *See* 15 U.S.C. §78u-4(a)(3)(B)(i).

### 2. Plaintiff Has The Largest Financial Interest In This Action

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. §78u-4(a)(3)(B)(iii).

During the Class Period, Plaintiff purchased a net total of 12,500 shares of Gerova stock at prices alleged to be artificially inflated by defendants' materially false and misleading statements and omissions. The total net value of those purchases is $93,775.[1] Plaintiff believes his damages to be the next value of his purchases because trading in the stock has been halted for three months and he believes these shares to now be worthless.

To the best of his knowledge, Plaintiff believes that he has the largest known financial interest in this case of any Class member and thus satisfies the largest financial interest requirement to be appointed as lead plaintiff for the Class. *See, e.g., Kokkinis v. Aegean Marine Petro Network, Inc.*, 2011 U.S. Dist. LEXIS 54939, at *3 (S.D.N.Y. May 19, 2011) (in appointing lead plaintiff, noting that "since no other class member has sought to be designated lead plaintiff, no one has demonstrated a greater financial interest than his"); *Vanamringe v. Royal Group Techs. Ltd.*, 237 F.R.D. 55, 58 (S.D.N.Y. 2006) (appointing lead plaintiff where movant sustained losses of $6,466.74 and no other shareholder sough to be appointed).

---

[1] *See* Plaintiff's Certification annexed as Exhibit B to the Rosen Declaration.

5

### 3. Plaintiff Satisfies The Requirements Of Fed. R. Civ. P. 23

To qualify as the presumptive lead plaintiff, the movant must "satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (citing 15 U.S.C. §78u-4(a)(3)(B)). Under Rule 23, a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a).

However, for the purposes of appointing lead plaintiff under §77z-1(a)(3)(B)(iii)(I)(cc), the inquiry into Rule 23's prerequisites "is less stringent than the inquiry the rule otherwise requires." *Ferrari v. Impath, Inc.*, 2004 U.S. Dist. LEXIS 13898, at *16 (S.D.N.Y. July 20, 2004). Indeed, "[a]t this stage in the litigation, one need only make a 'preliminary showing' that the Rule's typicality and adequacy requirements have been satisfied." *Id.* at *17. *See also Sczesny*, 223 F.R.D. at 324 (noting that of Rule 23's four prerequisites, only typicality and adequacy are "pertinent" to the selection of lead plaintiff at this stage of the proceedings); *Janbay*, 272 F.R.D. at 120; *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003).

#### a. Plaintiff's Claims Are Typical Of The Claims Of The Class

Typicality under Rule 23(a)(3) "requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco*

6

*Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007); *see also In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992) (holding that typicality is established where each class member's claim "arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability").

However, "the claims of the class representative need not be identical those of all members of the class." *Janbay*, 272 F.R.D. at 120. Rather, "the typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members." *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (2d Cir. 1992).

Here, Plaintiff's claims are typical of the claims asserted by the Class. Plaintiff, like all members of the Class, alleges that defendants violated the Exchange Act by publicly disseminating a series of false and misleading statements concerning Gerova's business, operations and financial prospects. Plaintiff, like all members of the Class, purchased Gerova shares during the Class Period at prices artificially inflated by defendants' misrepresentations and omissions, and was damaged thereby. As such, Plaintiff's claims are closely aligned with the other Class members' claims. *See Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.") (citing 1 Herbert B. Newberg, *Newberg on Class Actions: A Manual for Group Litigation at Federal and State Levels* § 3.13, at 167 (2d ed. 1985); 7A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure* § 1764, at 235-36 (1986)); *In re Elan Corp. Sec. Litig.*,

2002 U.S. Dist. LEXIS 23162, at *13 (S.D.N.Y. Dec. 3, 2002) (holding that typicality satisfied where presumptive lead plaintiff and the putative class members' claims arose out of their acquisition of company securities during the class period, and each of their claims alleges that defendants withheld or falsified material information concerning those securities).

### b.    Plaintiff Is An Adequate Representative Of The Class

Rule 23(a)(4)'s adequacy requirement is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." *Cent. States Se.*, 504 F.3d at 245. Rule 23(a)'s adequacy requirement is satisfied if: (1) the plaintiff has interests in common with, and not antagonistic to, the interests of the Class; and (2) the plaintiff's attorneys are qualified, experienced and able to conduct the litigation. *See, e.g., In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).

As evident by his representations made in Plaintiff's Certification, Plaintiff has expressed a strong desire to prosecute this action on behalf of the Class, and has shown that he is willing and able to take an active role in and control the litigation. *See Kokkinis*, 2011 U.S. Dist. LEXIS 54939, at *4 (finding that "based on [movant's] representations in his certification, he is likely to fairly and adequately represent the interests of the class"). Plaintiff has communicated with experienced counsel concerning this case and has made this motion to be appointed lead plaintiff. Plaintiff is not aware of any antagonistic interests between himself and the other members of the class. *See, e.g., Janbay*, 272 F.R.D. at 120 (finding adequacy met where there was no evidence of antagonism between interests of presumptive lead plaintiff and proposed class members). Moreover, Plaintiff has sustained substantial financial losses as a result of the alleged misconduct that is common to the class and is therefore extremely motivated to pursue the claims in this action in order to maximize the recovery for the class.

In addition, Plaintiff has retained qualified counsel, Harwood Feffer LLP, experienced attorneys with broad-based, multi-jurisdictional experience in complex class action litigation, including securities litigation, and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors. *See* firm resume of Harwood Feffer LLP annexed to the Rosen Declaration as Exhibit C. Accordingly, adequacy is sufficiently met.

### 4. Plaintiff Is Presumptively The Most Adequate Lead Plaintiff

The presumption in favor of appointing Plaintiff as lead plaintiff may be rebutted only upon proof "by a purported member of the Plaintiffs' class" that the presumptively most adequate plaintiff:

> (aa)  will not fairly and adequately protect the interest of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78 u-4(a)(3)(b)(iii)(I).

The presumption that Plaintiff is the most adequate lead plaintiff is not, therefore, subject to rebuttal. Plaintiff believes that he has the largest financial interest in this case and Plaintiff's ability to fairly and adequately represent the Class has been established above. Moreover, Plaintiff is not aware of any unique defenses defendants could raise against him that would render Plaintiff inadequate to represent the interests of the Class. In addition, as discussed below, Plaintiff has selected and retained competent and experienced counsel to represent him and the Class.

### C. The Court Should Approve Plaintiff's Choice of Lead Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to approval of the Court. *See* §21D(a)(3)(B)(v) of the Exchange Act. Thus, the Court should not disturb the lead plaintiff's choice of counsel unless necessary to protect the interests of the

plaintiff class. *See In re Smith Barney Transfer Agent Litig.*, 2006 U.S. Dist. LEXIS 19728, at *16 (S.D.N.Y. Apr. 17, 2006) ("The court should generally employ a deferential standard in reviewing the lead plaintiff's choices.") (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 274 (3d Cir. 2001)); *Kokkinis*, 2011 U.S. Dist. LEXIS 54939, at *4 (holding that lead plaintiff's choice of lead counsel is entitled to deference) (collecting cases).

Here, Plaintiff has retained Harwood Feffer LLP to pursue this litigation and will retain this firm as plaintiff's lead counsel, in the event Plaintiff is appointed lead plaintiff. As detailed in its firm resume, Harwood Feffer LLP possesses extensive experience in securities litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors. *See In re Elan Corp.*, 2002 U.S. Dist. LEXIS 23162, at *14 (approving lead plaintiff's selection of counsel where proposed counsel were "accomplished in the field of securities litigation and eminently qualified for this assignment"); *Kokkinis*, 2011 U.S. Dist. LEXIS 54939, at *5 (approving lead plaintiff's choice of counsel where counsel had substantial experience in securities class actions).

Therefore, the Court may be assured that, by granting Plaintiff's motion, the Class will receive the highest caliber of legal representation.

## III.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully asks the Court to grant his motion and enter an Order (a) consolidating the Related Actions; (b) appointing Plaintiff as lead plaintiff; and (c) approving Plaintiff's selection of Harwood Feffer LLP as lead counsel, and granting such other relief as the Court may deem just and proper.

Dated:     New York, New York
           July 5, 2011

>                          Respectfully submitted,
>
>                          **HARWOOD FEFFER LLP**
>
>                 By:      s/Robert I. Harwood
>                          Robert I. Harwood
>                          Samuel K. Rosen
>                          Peter W. Overs, Jr.
>                          488 Madison Avenue, 8th Floor
>                          New York, NY  10022
>                          Telephone:  (212) 935-7400
>                          Facsimile:  (212) 753-3630
>
>                          **Attorneys for Plaintiff**

11