## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
————————————————————————— x
ALI ARAR, On Behalf Of Himself And All Others      :
Similarly Situated,                                :
                                                   :   Electronically Filed
                               Plaintiff,          :
                                                   :
              v.                                   :
                                                   :   Civil Action No.: 11-CIV-03081 (RJH)
GEROVA FINANCIAL GROUP LTD, GARY                   :   (ECF Case)
HIRST, MICHAEL HLAVSA, JOSEPH BIANCO,              :
JACK DOUECK, ARIE VAN ROONE, and KEITH             :
LASLOP,                                            :
                                                   :
                                                   :
                               Defendants.         :
                                                   :
                                                   :
————————————————————————— x
WAYNE T. BONNER, On Behalf Of Himself And          :
All Others Similarly Situated,                     :
                                                   :
                                                   :   Electronically Filed
                               Plaintiff,          :
                                                   :
              v.                                   :
                                                   :   Civil Action No.: 11-CIV-03796 (RJH)
GEROVA FINANCIAL GROUP LTD, GARY                   :   (ECF Case)
HIRST, MICHAEL HLAVSA, JOSEPH BIANCO,              :
JACK DOUECK, ARIE VAN ROONE, and KEITH             :
LASLOP,                                            :
                                                   :
                                                   :
                               Defendants.         :
                                                   :
————————————————————————— x
```

## MEMORANDUM OF LAW IN SUPPORT OF XIANHUA XU'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF FOR THE WARRANT SUBCLASS AND APPROVAL OF CHOICE OF LEAD COUNSEL

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 3

ARGUMENT ........................................................................................................................... 6

     I.     THIS COURT SHOULD CONSOLIDATE RELATED ACTIONS ................... 6

     II.    XU SHOULD BE APPOINTED LEAD PLAINTIFF
           OF A WARRANT HOLDER SUBCLASS .......................................................... 7

         A.  The PSLRA's Lead Plaintiff Provisions ........................................................ 7

         B.  The PSLRA Mandates That Xu Should Be Appointed Lead Plaintiff
             Of A Warrant Subclass ................................................................................. 8

              1.  Xu Satisfies The PSLRA's Procedural Requirements ........................ 9

              2.  Xu Possesses The Largest Known Financial Interest
                   In Gerova Warrants Than Any Other Movant .................................... 9

              3.  Xu Satisfies Rule 23's Typicality And Adequacy
                   Requirements .................................................................................... 10

         C.  Warrant Purchaser Plaintiffs Are Necessary To Protect Warrant
             Holders' Interests ........................................................................................ 13

          D.  Appointing Separate Lead Plaintiffs And Counsel For The Warrant
             Purchasers Is Entirely Consistent With The PSLRA ................................... 14

     III.   THE COURT SHOULD APPROVE MOVANT'S SELECTION OF
           LEAD COUNSEL FOR THE WARRANT SUBCLASS .................................. 16

CONCLUSION ...................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Prods. v. Windsor,*
521 U.S. 591 (1997) ....................................................................................................15

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.,*
252 F.R.D. 188 (S.D.N.Y. 2008)...............................................................................10

*Chill v. Greentree Fin. Corp.,*
181 F.R.D. 398 (D. Minn. 1998) ................................................................................15

*Chisholm v. Transouth Fin. Corp.,*
184 F.R.D. 556 (E.D. Va. 1999) .................................................................................11

*Constance Sczesny Trust v. KPMG LLP,*
223 F.R.D. 319 (S.D.N.Y. 2004)................................................................................12

*Ferrari v. Impath, Inc.,* 03 CIV. 5667 (DAB),
2004 WL 1637053 (S.D.N.Y. July 20, 2004) ............................................................17

*Friedman v. Quest Energy Partners LP,*
261 F.R.D. 607 (W.D. Okla. 2009) .............................................................................17

*Glauser v. EVCI Career Colls. Holding Corp.,*
236 F.R.D. 184 (S.D.N.Y. 2006).................................................................................8

*Harold Roucher Trust U/A DTD 09/21/72 v. Franklin Bank Corp.,*
C.A. No. 4:08-cv-1810, 2009 WL 1941864 (S.D. Tex. July 6, 2009) ......................13

*Huang v. Acterna Corp.,*
220 F.R.D. 255 (D.Md. 2004).............................................................................10, 16

*In re BP, PLC Sec. Litig.,*
758 F. Supp. 2d 428 (S.D. Tex. 2010) ...........................................................13, 15, 17

*In re Cendant Corp. Litig.,*
182 F.R.D. 144 (D.N.J. 1998) ....................................................................................15

*In re Drexel Burnham Lambert Group, Inc.,*
960 F.2d 285 (2d. Cir. 1992), *cert. denied,* 506 U.S. 1088 (1993) ..........................11

*In re Host America Corp. Sec. Litig.,* Master No. 05-CV-1250 (VLB), 2007 WL
3048865 (D. Conn. Oct. 18, 2007).......................................................................13, 14

*In re Initial Pub. Offering Sec. Litig.,*
214 F.R.D. 117 (S.D.N.Y. 2002).................................................................................11

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    182 F.R.D. 42 (S.D.N.Y. 1998)........................................................................14, 16

*In re Oxford Health Plans Sec. Litig.*,
    199 F.R.D. 119 (S.D.N.Y. 2001)...........................................................................13

*In re Parmalat Sec. Litig.*, Master Docket 04 Civ. 0030 (LAK) (S.D.N.Y. May 21,
    2004)................................................................................................................15

*In re Prudential Sec. Inc. Ltd. P'Ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995)..........................................................................11

*In re PSINet Sec. Litig.*,
    Civ. No. 00-1850-A (E.D. Va. Jan. 19, 2001) .......................................................15

*In re Royal Ahold N.V. Securities and ERISA Litig.*,
    219 F.R.D. 343 (D.Md. 2003) ("*Royal Ahold*").............................................passim

*In re Smith Barney Transfer Agent Litig.*, 05 CIV. 7583(WHP), 2006 WL 991003
    (S.D.N.Y. Apr. 17, 2007)....................................................................................17

*In re USEC Sec. Litig.*,
    168 F. Supp. 2d 560 (D.Md. 2001)......................................................................10

*Johnson v. Celotex Corp.*,
    899 F.2d 1281 (2d Cir. 1990) ................................................................................6

*Kaplan v. Gelford*,
    240 F.R.D. 88 (S.D.N.Y. 2007)..............................................................................6

*Linn v. Allied Irish Banks, PLC*,
    60 Fed. R. Serv. 3d 223 (S.D.N.Y. 2004)..............................................................16

*Metro Servs. Inc. v. Wiggins*,
    158 F.3d 162 (2d. Cir. 1998).................................................................................8

*Model Associates, Inc. v. U.S. Steel Corp.*,
    88 F.R.D. 338 (S.D. Ohio 1980) .........................................................................14

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)...........................................................................................15

*Simon v. Westinghouse Elec. Corp.*, 73 F.R.D. 480 (E.D. Pa. 1977) .........................................15

*Strougo v. Brantley Capital Corp.*,
    243 F.R.D. 100 (S.D.N.Y. 2007)..........................................................................10

*Trattner v. American Fletcher Mortgage Investors*,
    74 F.R.D. 352 (S.D. Ind. 1976)...........................................................................14

*Vladimir v. Bioenvision, Inc.*, 07 CIV. 6416SHSAJP,
 2007 WL 4526532 (S.D.N.Y. Dec. 21, 2007) ........................................................16, 17

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
 216 F.R.D. 248 (S.D.N.Y.) ..................................................................... 10, 11, 12

*Weisberg v. APL Corp.*,
 76 F.R.D. 233 (E.D.N.Y. 1977) ........................................................................13

*Weltz v. Lee*,
 199 F.R.D. 129 (S.D.N.Y. 2001)........................................................................12

*Zirkin v. Quanta Capital Holdings, Ltd.*,
 C.A. No. 07 Civ. 851 (RPP) (S.D.N.Y. May 14, 2007) ........................................15

**STATUTES**

15 U.S.C. § 78u-4.......................................................................................passim

15 U.S.C. §78j(b) and 78t(a)...........................................................................1, 7

**OTHER AUTHORITIES**

17 C.F.R. §240.10b-5 .................................................................................... 1

Fed. R. Civ. P. 23 ...................................................................................passim

Fed. R. Civ. P. 42(a)....................................................................................6, 7

Xianhua Xu ("Movant" or "Xu"), on behalf of himself and the subclass defined herein, pursuant to Section 21D(a)(3)(B) of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), respectfully submits this Memorandum of Law in support of his Motion for the entry of an order: (1) consolidating the Actions (defined below) and any related actions that may be filed; (2) appointing Xu as Lead Plaintiff for a subclass consisting of all purchasers of warrants issued by Gerova Financial Group Ltd. ("Gerova" or the "Company") from January 8, 2010 to February 23, 2011, inclusive (the "Class Period"), and incurred damages thereby (the "Warrant Subclass"); and (3) approving Movant's selection of the law firm of Spector Roseman Kodroff & Willis, P.C. as Lead Counsel for the Warrant Subclass.

## PRELIMINARY STATEMENT

Presently pending before the Court are two (2) related securities class actions (the "Actions") brought on behalf of purchasers of all securities issued by Gerova.  Each of these Actions alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78j(b) and 78t(a), and Securities Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5.

In accordance with the Exchange Act, as amended by the PSLRA, 15 U.S.C. § 78u-4, and for the reasons set forth below, Xu respectfully moves this Court for an Order appointing him Lead Plaintiff for the Warrant Subclass.  This motion is made on the grounds that Xu is the most adequate plaintiff, as defined by the PSLRA, to represent a subclass of warrant purchasers who incurred damages as a result of the Defendants' alleged violations of the federal securities laws.  In this regard, Movant suffered losses of

approximately \$64,128 in connection with his purchases of Gerova warrants.[1]  *See*, Roseman Decl. Ex. A.[2]  To Movant's knowledge, these losses exceed those of any other purchaser or group of purchasers of Gerova warrants in this Action.  Thus, under Section 21D of the Exchange Act, Xu is presumptively the "most adequate plaintiff" with respect to Gerova warrants and should be appointed Lead Plaintiff for the Warrant Subclass.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  For purposes of this motion, Movant also satisfies the requirements of Rule 23 of the Federal Rule of Civil Procedure (Fed. R. Civ. P.) in that his claims are typical of the putative Class and he will fairly and adequately represent the interests of the Class.

Movant is represented by Spector Roseman Kodroff & Willis, P.C. ("Spector Roseman"), which seeks appointment as Lead Counsel for the Warrant Subclass.  Spector Roseman is an eminently qualified law firm to prosecute securities fraud claims such as the ones asserted in the Actions.

As demonstrated below, courts often appoint separate representation for holders of different types of securities covered in a class action.  Moreover, the lead plaintiff stage of the proceedings is the appropriate time to appoint a separate lead plaintiff and lead counsel for various types of securities so that their interests are protected from the outset.  Thus, this Court should appoint plaintiff Xu to represent the Warrant Subclass and its choice of counsel, Spector Roseman, to serve as Lead Counsel for the Warrant

---

[1] The losses suffered by Movant, as detailed herein, may not be the same as legally compensable damages, measurement of which is often a complex legal question, which cannot be determined at this stage of the litigation. However, the approximate recoverable damages can be determined from the executed certifications required under Section 21D of the Exchange Act and based upon reference to the market decline in Gerova warrants.

[2] References to "Roseman Decl. Ex. __" are to the exhibits attached to the accompanying Declaration of Robert M. Roseman.

Subclass so that Xu and other members of the Warrant Subclass receive proper representation of their unique interests.

## FACTUAL BACKGROUND

These securities class actions are brought on behalf of all persons who purchased Gerova securities during the Class Period.  As alleged in the complaints filed in the Actions, Gerova, headquartered in Bermuda, was initially organized as a special purpose acquisition company under the name Asia Special Situations Acquisitions Corp.  Its securities traded on the NYSE Amex Exchange.

On January 16, 2008, the Company conducted an initial public offering (the "IPO") of 10 million units – each consisting of one warrant and one share.  At the time of the IPO, Gerova's stated intent was to acquire an "as yet unidentified business or set of businesses."  In doing so, Gerova attempted to acquire two separate companies in which Gerova insiders had undisclosed interests.  However, both transactions failed for different reasons.

Gerova finally found success in acquiring business interests when, on January 7, 2010, the Company announced that it was acquiring three insurance companies (Allied Provident; Northstar Reinsurance Ltd. – Bermuda; and Northstar Reinsurance Ltd. – Ireland), as well as two commercial loan portfolios from Stillwater Asset Back Fund ("Stillwater") and assets and investments from Wimbledon Financing Master Fund Ltd. and Wimbledon Real Estate Financing Fund Ltd. managed by Weston Capital Asset Management.  As a result of these transactions, Gerova's balance sheet reflected a net equity value of $832.6 million.  On January 20, 2010, the Company announced that it had consummated the transactions.  It also committed to appraise the two commercial loan

3

portfolios it acquired from Stillwater assets by March 31, 2010, and provide quarterly appraisals of the commercial loan portfolios thereafter.

On February 10, 2011, Gerova announced that it accepted the resignation of defendant Gary Hirst as Gerova's Chief Financial Officer and Chairman of the Board. The reasons behind his resignation were not provided. The Company subsequently announced that defendant Hirst would be replaced by Marshall Manley.

In addition, on March 31, 2010, the deadline to release the audited valuation of the Stillwater assets came and went without any disclosure or comment by the Company. Gerova's failure to meet the appraisal commitments was convenient since previous audits of Stillwater performed by PricewaterhouseCoopers ("PwC") revealed that the assets were not worth what Stillwater claimed them to be worth. For example, according to the Dalrymple report, PwC was not able to express an opinion on Stillwater's financial statements as of December 31, 2009 because, among other reasons, PwC was not able to obtain audit evidence in relation to $136 million of fair value and expressed uncertainty in relation to Stillwater's ability to repay $95.7 million in leverage. In yet another example, the Dalrymple report provided that PwC issued an adverse opinion on Stillwater's financial statements for the 2008 fiscal year. This suggested that the Company had significantly overpaid for the loan portfolios it acquired from Stillwater.

Less than two weeks after the March 31 deadline passed, on April 13, 2010, Manley "resigned from all positions held with Gerova" without disclosing any reasons for his departure. Just as curiously, defendant Hirst resumed his role as Chairman of the Board.

On June 1, 2010, the U.S. Securities & Exchange Commission ("SEC") served a Wells Notice – a precursor to an enforcement action – on Stillwater for making materially misleading statements to investors regarding its funds and regarding the fact that 40% of its assets were either in foreclosure or were experiencing interest payment delinquencies of 90 days or more.  In January 2011, Stillwater stated that the June 2010 Wells Notice was resolved and that there was no pending SEC enforcement action.

Despite this, on January 10, 2011, Dalrymple Financial, an independent hedge fund research practice, issued a report ("the Dalrymple Report") that concluded that the Stillwater assets had been grossly overvalued and that Gerova exhibits the "hallmarks of a classic fraud."  Gerova responded by hiring Kroll, a global intelligence and risk analysis firm, to investigate the Dalrymple Report's findings, as well as those of other short sellers.  The hiring of Kroll backfired on Gerova, however, as it highlighted the allegations in the report, rather than discrediting Dalrymple.  Also in January 2011, *Forbes* published a redacted copy of the Wells Notice and *The Wall Street Journal* released an article concluding that the Stillwater portfolio was impaired at least as far back as May 2010.

On February 11, 2011, some of Gerova's senior management, including its CEO, announced their resignations.  On this news, Gerova's share price dropped to $12.00.  Just four days later, on February 15, 2011, the Company's newly appointed CEO, Dennis Pelino, withdrew his acceptance offer, sending Gerova's share price down to $6.50.  On February 23, 2011, trading in Gerova's shares was halted on the New York Stock Exchange, pending disclosure of additional information related to its operations, at a price of $5.28.  On April 18, 2011, the Company announced that it would seek de-listing

from the NYSE.  Gerova's stock is currently valued at well under $1.00 and is trading on the pink sheets.

## ARGUMENT

### I.   THIS COURT SHOULD CONSOLIDATE RELATED ACTIONS

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter .... [is] filed," the court shall not appoint a lead plaintiff "until after the decision on the motion to consolidate is rendered."   15 U.S.C. §78u-4(a)(3)(B)(ii).   Currently, two (2) other similar securities class actions have been filed in this Court against Gerova and members of its senior management.

Under Rule 42(a), Fed. R. Civ. P., consolidation is appropriate when the actions involve common questions of law or fact.  Consolidation is particularly appropriate in securities class action litigations such as this where the related Actions stem from the same series of false and misleading statements and arise under the Exchange Act.  *See Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990); *Kaplan v. Gelford*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007); *In re Royal Ahold N.V. Securities and ERISA Litig.*, 219 F.R.D. 343, 348 (D.Md. 2003) ("*Royal Ahold*") ("[c]onsolidation is often appropriate in a case of multiple securities fraud actions that are based on the same public statements and reports."); *see also,* 15 U.S.C. § 78u-4(a)(3)(B)(ii) (the PSLRA recommends courts to make the decision regarding the appointment of lead plaintiffs for the consolidated action "as soon as practicable after [the consolidation] decision is rendered").

These actions present substantially similar factual and legal issues and arise out of the same alleged scheme by Defendants and allege violations of the federal securities

laws.  Each filed action alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, names Gerova and its senior officers as defendants, and arises from the same underlying facts and circumstances.  Because these actions are based on the same facts and involve the same subject matter, discovery obtained in this lawsuit will undoubtedly be relevant to all others.  Consolidation of the actions therefore is appropriate under Rule 42(a) and the PSLRA as common questions of law and fact predominate. 42(a), Fed. R. Civ. P.; 15 U.S.C. § 78u-4(a)(3)(B)(ii).  Therefore, these actions should be consolidated.

## II.   XU SHOULD BE APPOINTED LEAD PLAINTIFF OF A WARRANT HOLDER SUBCLASS

### A.   The PSLRA's Lead Plaintiff Provisions

The PSLRA sets forth a procedure for selecting a lead plaintiff for "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 US.C. §§ 78u-4(a)(l) and (a)(3)(B). Specifically, Section 2lD(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, provides that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class -
>
> (I)   of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)   that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 US.C. § 78u-4(a)(3)(A)(i).

Under 15 U.S.C. § 78u-4(a)(3)(B)(i), the Court is to consider any motion made by class members and shall appoint as Lead Plaintiff the movant that the Court determines to be most capable of adequately representing the interests of the class. Specifically, the PSLRA provides that this Court:

> shall appoint as lead plaintiff the member or members of the purported plaintiff class that *the court determines to be most capable of adequately representing the interests of class members* (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.

15 U.S.C. § 78u-4(a)(3)(B)(i) (emphasis added).   It is not a requirement that the lead plaintiff has filed a complaint.

In adjudicating this motion, the Court must be guided by a presumption that the "most adequate plaintiff" is the person or group of persons who: (a) filed a complaint *or* made a motion to serve as Lead Plaintiff; (b) has the largest financial interest in the relief sought by the class; and (c) who otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See,* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).   *See also, Metro Servs. Inc. v. Wiggins,* 158 F.3d 162, 164 (2d. Cir. 1998); *Royal Ahold,* 219 F.R.D. at 348.   This presumption may be rebutted by proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).   *See also, Glauser v. EVCI Career Colls. Holding Corp.,* 236 F.R.D. 184, 187 (S.D.N.Y. 2006); *Royal Ahold,* 219 F.R.D. at 348.

> **B.      The PSLRA Mandates That Xu Should Be Appointed Lead Plaintiff Of A Warrant Subclass**

As discussed below, Xu is presumptively the most adequate plaintiff for a subclass of warrant purchasers because he has satisfied all of the PSLRA's procedural

requirements, holds the largest known financial interest in Gerova warrants of any movant, and satisfies Rule 23's typicality and adequacy requirements.

### 1.      Xu Satisfies The PSLRA's Procedural Requirements

Movant Xu has filed this Motion to serve as Lead Plaintiff of the Warrant Subclass in a timely manner.  Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the first plaintiff to file a complaint in the Actions caused notice regarding the pending nature of this case to be published on *GlobeNewswire*, a national, business-oriented news service, on May 5, 2011.  *See* Roseman Decl. Ex. B.  Thus, under Sections 21D(a)(3)(A) and (B) of the Exchange Act, any person who is a member of the proposed Class may apply to be appointed as lead plaintiff by the Court within sixty (60) days after publication of the notice, *i.e.,* on or before July 5, 2011.  Movant has filed his motion within the required time frame.

In addition, pursuant to Section 12D(a)(2) of the Exchange Act, Movant has signed and submitted his certification detailing his suitability to serve as a class representative in this case.  *See,* Roseman Decl., Exhibit A.

### 2.      Xu Possesses The Largest Known Financial Interest In Gerova Warrants Than Any Other Movant

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the person (or persons) or entity (or entities) with the largest financial interest in the relief sought by the class, so long as the movant meets the requirements of Rule 23, Fed. R. Civ. P.  *See*, 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

Overall, Xu suffered substantial losses of $64,128 on his investments in warrants issued by Gerova.  *See* Roseman Decl. Ex. A.  Movant is presently unaware of any other

movant with a larger financial interest in Gerova's warrants to represent a separate subclass. Consequently, Xu is entitled to the legal presumption that he is the most adequate plaintiff to represent the Warrant Subclass, given that he also satisfies Rule 23's typicality and adequacy requirements.

### 3.    Xu Satisfies Rule 23's Typicality <u>And Adequacy Requirements</u>

In addition to the largest financial interest requirement, the PSLRA also requires that the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-(4)(a)(3)(B). With respect to the claims of the class representative, Rule 23(a) requires that: (a) the class is so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the class; (c) such claims are typical of those of the class; and (d) the representative will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 191 (S.D.N.Y. 2008).

However, "[a] wide-ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification." *In re USEC Sec. Litig.*, 168 F. Supp. 2d 560, 566 (D.Md. 2001)(citing *In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 412 (D.N.J. 1998)). In this regard, typicality and adequacy of representation are the only provisions relevant to the determination of lead plaintiffs under the PSLRA." *See, e.g., Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 105 (S.D.N.Y. 2007); *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y.). *Accord Huang v. Acterna Corp.*, 220 F.R.D. 255, 259 (D.Md. 2004); *Royal Ahold*, 219 F.R.D. at 350.

The typicality requirement of Rule 23(a)(3), Fed. R. Civ. P. is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). *See also, Royal Ahold*, 219 F.R.D. at 350 ("typicality is satisfied if the movant's claim arises from the same course of events … and relies on similar legal theories"). In other words, typicality is demonstrated where the movant's claim "arise from the same conduct from which the other class members' claims and injuries arise." *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002); *see also, In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d. Cir. 1992), *cert. denied*, 506 U.S. 1088 (1993). As one court noted, "[t]he premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class. Complete identification between the claims constituting each individual action is not required." *Chisholm v. Transouth Fin. Corp.*, 184 F.R.D. 556, 563 (E.D. Va. 1999). *Accord, Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 253 (S.D.N.Y. 2003); *In re Prudential Sec. Inc. Ltd. P'Ships Litig.*, 163 F.R.D. 200, 208 (S.D.N.Y. 1995) ("The typicality requirement of Rule 23(a)(3) is liberally construed; and 'typical' does not mean 'identical' … The possibility of factual distinctions between claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact.")

The typicality requirement is plainly satisfied in this case, where Movant seeks the same relief and advances the same legal theories as other class members - namely, that Defendants violated the Exchange Act and caused economic harm to holders of all securities issued by Gerova. Movant, as did all members of the Warrant Subclass,

acquired Gerova warrants at prices artificially inflated by Defendants' misrepresentations and omissions, and were damaged thereby. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the class claims, satisfy the typicality requirement of Rule 23(a)(3). *See, Royal Ahold*, 219 F.R.D. at 350; *Weinberg,* 216 F.R.D. at 253.

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate when "(1) class counsel is qualified, experienced and generally able to conduct the litigation; (2) the class members do not have interests that are antagonistic to one another; and (3) the class has a sufficient interest in the outcome of the case to ensure vigorous adequacy." *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) (citation omitted). *See also, Constance Sczesny Trust v. KPMG LLP,* 223 F.R.D. 319, 324 (S.D.N.Y. 2004)(citations omitted); *Royal Ahold*, 219 F.R.D. at 350.

Movant is an adequate representative for the Warrant Subclass. There is no antagonism between Movant's interests and those of the class. To the contrary, the interests of Xu and absent Warrant Subclass members are squarely aligned. Moreover, Movant has retained counsel highly experienced in prosecuting securities class actions vigorously and efficiently, and have timely submitted their choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). Furthermore, Movant suffered a substantial loss in the form of the diminution of value in the price of his Gerova warrants. As such, Xu has a sufficient interest in the outcome of the case to ensure vigorous prosecution of this action. Therefore, Movant satisfies the adequacy requirement.

**C.      Warrant Purchaser Plaintiffs Are Necessary To Protect Warrant Holders' Interests**

Although many issues in this case are undoubtedly critical to both shareholder and warrant purchaser claims (*e.g.*, the defendants' misrepresentations and questionable business practices which impacted both warrant and stock prices), the inherent differences between warrant purchasers and stock purchasers call for the appointment of a separate warrant purchaser lead plaintiff and counsel – from the outset of the litigation – to ensure that warrant purchasers' claims are vigorously pursued and that their damages are fairly calculated.  *See In re Oxford Health Plans Sec. Litig.*, 199 F.R.D. 119, 123 (S.D.N.Y. 2001) (typicality requires plaintiff to have incentive to prove all elements of cause of action that would otherwise be presented by individual members of the class); *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 441 (S.D. Tex. 2010) (appointing lead plaintiff of subclass of shareholders that purchased during a different time period because "the Court's foremost concern at this stage is to preserve the claims of all potential class members); *Harold Roucher Trust U/A DTD 09/21/72 v. Franklin Bank Corp.*, C.A. No. 4:08-cv-1810, 2009 WL 1941864, *3 (S.D. Tex. July 6, 2009) (appointing separate lead plaintiff after lead plaintiff failed to include preferred stockholders in its complaint because "it did not have standing to pursue their claims."); *Weisberg v. APL Corp.*, 76 F.R.D. 233, 238 (E.D.N.Y. 1977) (lack of incentive to delve into complicated damages analysis of non-common stock securities when common stock damages were much easier to assess is a reason to deny certification of class consisting of both common stock and non-common stock securities purchasers).

Typically, there "would be differing proofs presented by shareholders and warrant holders as to how efficient their respective markets were[.]"  *In re Host America Corp.*

*Sec. Litig.*, Master No. 05-CV-1250 (VLB), 2007 WL 3048865, *3 (D. Conn. Oct. 18, 2007) (noting that an assessment of damages assumes the securities in question were trading in an efficient market which is an issue of fact that "may differ between shareholders and warrant holders); *see also Model Associates, Inc. v. U.S. Steel Corp.*, 88 F.R.D. 338, 339 (S.D. Ohio 1980) (acknowledged that the interest of the shareholder was antagonistic to the debenture holder); *Trattner v. American Fletcher Mortgage Investors*, 74 F.R.D. 352, 354 (S.D. Ind. 1976) (class purporting to represent purchasers of shares and warrants was represented by two shareholders and a warrant holder).

Separate representation of these interests is accordingly required at this stage of the litigation to ensure that all claims are vigorously and fairly pursued.

**D.    Appointing Separate Lead Plaintiffs And Counsel For The Warrant Purchasers Is Entirely Consistent With The PSLRA**

The PSLRA expressly contemplates the appointment of more than one plaintiff, and there is nothing in the statute that limits such appointments to either competing or non-competing groups of plaintiffs.  *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998).  Indeed, as Judge Brieant stated in *Oxford Health Plans*:

> Allowing for diverse representation ensures that the interests of all class members will be adequately represented in the prosecution of the action and in the negotiation and approval of a fair settlement and that the settlement process will not be distorted by the differing aims of differently situation claimants.

*Id.*   Moreover, "[t]he PSLRA does not recommend or delimit a specific number of lead plaintiffs and the lead plaintiff decision must be made on a case by case basis, taking account of the unique circumstances of each case."  *Id.*

14

Furthermore, the Court is required to ensure that independent classes with conflicts are protected by subdivision and separate representation. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999); *Amchem Prods. v. Windsor*, 521 U.S. 591, 626-27 (1997). In large and complicated cases, it is important that all parts of the class be represented fully and adequately, so that all parts of the class can be bound by any judgment. *Simon v. Westinghouse Elec. Corp.*, 73 F.R.D. 480, 485 (E.D. Pa. 1977).

Not surprisingly, courts have seen fit to appoint multiple lead plaintiffs and counsel in securities class actions for classes with potentially divergent interests. *See e.g., In re BP*, 758 F. Supp. 2d at 441 (appointment of two lead plaintiffs and creation of subclass of distinct purchasers representing different interests "does not conflict with the PSLRA's primary goal of shifting control of securities class actions from lawyers to investors."); *In re Parmalat Sec. Litig.*, Master Docket 04 Civ. 0030 (LAK) (S.D.N.Y. May 21, 2004) (attached to the Roseman Decl. as Ex. C) (appointing separate lead plaintiffs and their counsel for purchasers of bonds and purchasers of Parmalat shares); *Zirkin v. Quanta Capital Holdings, Ltd.*, C.A. No. 07 Civ. 851 (RPP), Mem. Endorsement at 2 (S.D.N.Y. May 14, 2007) (attached to the Roseman Decl. as Ex. D) (appointing separate lead plaintiffs for purchasers of common stock and purchasers of preferred stock); *In re PSINet Sec. Litig.*, Civ. No. 00-1850-A (E.D. Va. Jan. 19, 2001) (attached to the Roseman Decl. as Ex. E) (appointing a bond purchaser as a co-lead plaintiff on behalf of a bond purchaser class); *In re Cendant Corp. Litig.*, 182 F.R.D. 144, 149 (D.N.J. 1998) (conflict of interest required appointment of separate lead plaintiff to represent investors in derivative securities, known as "Feline Prides," to protect their interests); *Chill v. Greentree Fin. Corp.*, 181 F.R.D. 398, 414-16 (D. Minn. 1998)

(appointing separate lead plaintiffs and counsel for options purchasers and securities purchasers); *In re Oxford Health Plans*, 182 F.R.D. at 49 (appointing co-lead plaintiffs, in part, out of concern that pension fund lead plaintiffs owed primary fiduciary obligation to present and future pensioners, not the rest of class).

Appointing Movant as Lead Plaintiffs for the Warrant Subclass and his counsel, Spector Roseman, as Lead Counsel for the Warrant Subclass does not undermine the policies of the PSLRA. Indeed, the potential for an unfair outcome for the warrant holder class is great unless a warrant purchaser representative is involved in litigating the case from the outset. Further, if the Court is disinclined to appoint separate representation for subclasses, Movant alternatively requests, consistent with the PSLRA (as discussed *supra*), that he and his counsel be respectively appointed co-lead plaintiffs and co-lead counsel to allow "for broad representation…and assure the court that any settlement when proposed will be provident." *In re Oxford Health Plans*, 182 F.R.D. at 49. This provides the Court with an alternative procedural method of providing warrant purchasers with the adequate representation required by the PSLRA and applicable case law.

## III.   THE COURT SHOULD APPROVE MOVANT'S SELECTION OF LEAD COUNSEL FOR THE WARRANT SUBCLASS

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel for the Class, subject to the Court's approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). *See also, Huang*, 220 F.R.D. at 259. "'Giving the Lead Plaintiff primary control for the selection of counsel was a critical part of Congress' effort to transfer control of securities class actions from lawyers to investors.'" *Vladimir v. Bioenvision, Inc.*, 07 CIV. 6416SHSAJP, 2007 WL 4526532, *11 (S.D.N.Y. Dec. 21, 2007) (*quoting Fitzgerald v. Citigroup Inc.*, 2004 WL 613107, *4 (S.D.N.Y. Mar. 26, 2004)); *accord, e.g., Linn v. Allied Irish Banks, PLC*,

60 Fed. R. Serv. 3d 223 (S.D.N.Y. 2004); *Ferrari v. Impath, Inc.*, 03 CIV. 5667 (DAB), 2004 WL 1637053, *7 (S.D.N.Y. July 20, 2004). "[T]he court should generally employ a deferential standard in reviewing the lead plaintiff's choices." *Vladimir*, 2007 WL 4526532 at *11 (*quoting In re Cendent Corp. Litig.*, 264 F.3d 201, 274 (3d Cir. 2001), *cert. denied*, 535 U.S. 929, 122 S.Ct. 1300 (2002)); *accord, e.g., In re Smith Barney Transfer Agent Litig* ., 05 CIV. 7583(WHP), 2006 WL 991003, *6 (S.D.N.Y. Apr. 17, 2007).

Courts often appoint separate counsel to represent the interests of a subclass at the lead plaintiff stage. *See, e.g., In re BP*, 758 F. Supp. 2d at 442 (appointing separate counsel for each subclass) *Friedman v. Quest Energy Partners LP*, 261 F.R.D. 607, 615 (W.D. Okla. 2009) (because of conflict between separate classes, the court concluded that there should be separate lead counsel for each class).

Movant has selected Spector Roseman to serve as Lead Counsel on behalf of the Warrant Subclass.  As detailed in its firm resume, Spector Roseman has extensive expertise and experience in the field of securities litigation. *See* Roseman Decl. Ex. E.  In this regard, Spector Roseman has successfully prosecuted numerous securities fraud class actions and obtained excellent recoveries on behalf of defrauded investors.

Thus, the Court may be confident that, in Spector Roseman, the class will receive the highest caliber of legal representation in full compliance with the mandates of the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).

## CONCLUSION

For the foregoing reasons, Movant respectfully request that the Court: (1) consolidate the Actions and any related actions that may be filed; (2) appoint the Mr.

Xu as Lead Plaintiff for the Warrant Subclass; (3) approve Movant's selection of Spector

Roseman Kodroff & Willis, P.C. as Lead Counsel for the Warrant Subclass; and (4) grant

such other relief as the Court may deem just and proper.

**DATED:** July 5, 2011                    Respectfully submitted,

                                    **SPECTOR ROSEMAN KODROFF**
                                    **    & WILLIS, P.C.**

                    By:     _/s/ Robert M. Roseman_____
                            Robert M. Roseman
                            Andrew D. Abramowitz
                            David Felderman
                            Daniel J. Mirarchi
                            1818 Market Street
                            Suite 2500
                            Philadelphia, PA 19103
                            Tel:  (215) 496-0300
                            Fax: (215) 496-6611

                            **Proposed Lead Counsel**
                            **For the Warrant Subclass**